UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA MARGARITA HERNANDEZ, | Case No. 1:20-cv-00897-JLT-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REVERSED AND THE CASE BE REMANDED FOR AN AWARD OF BENEFITS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | (ECF Nos. 1, 30). |
| | FOURTEEN (14) DAY DEADLINE |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability benefits.[1] On May 18, 2022, this action was reassigned to the undersigned. (ECF No. 37).

Plaintiff's disability determination was previously appealed to this Court in 1:17-cv-912-EPG. In that case, the Court reversed and remanded the ALJ's decision and ordered that a certain medical opinion be credited as true and, "[t]o the extent the Commissioner believes that jobs are

---

[1] Plaintiff applied for disability insurance benefits and supplemental security income. This Court uses "disability benefits" to collectively refer to the benefits sought.

1

available notwithstanding these limitations, the ALJ may solicit the testimony of a Vocational Expert if she sees fit. If the Commissioner does not so believe, or a Vocational Expert finds that the limitations preclude employment, benefits shall be awarded." (1:17-cv-912-EPG – ECF No. 28, pp. 5-6). On remand, the ALJ solicited additional medical opinions, which concluded that Plaintiff was not disabled. Based on these medical opinions, yet purportedly crediting as true the prior medical opinion, the ALJ concluded Plaintiff was disabled at the time of the first medical opinion, but that disability ended on December 5, 2018—the day before a subsequent medical examination.

Plaintiff presents the following issue for decision: "The ALJ violated the law of the case doctrine by scheduling a consultative examination[] and calling a medical expert despite the District Court's Order." (ECF No. 30, p. 1).

The Court, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, recommends as follows:

## I.    BACKGROUND

As described briefly above, Plaintiff had an earlier case, 1:17-cv-912-EPG, before the undersigned challenging her denial of disability benefits. At the administrative level, Plaintiff had applied for disability benefits in 2014, alleging disability since June 26, 2013. (A.R. 228-43). After a hearing, ALJ Cynthia Floyd issued a decision in May 2016, concluding that Plaintiff was not disabled. (A.R. 34-35). ALJ Floyd found that Plaintiff suffered from the following severe impairments: obesity, mild lumbosacral disc space narrowing at L3-L4, mild lower lumbar facet arthropathy, and bilateral knee degenerative joint disease. (A.R. 25). ALJ Floyd ultimately found Plaintiff not disabled, in part because she gave little weight to the opinion of Plaintiff's treating physician, Dr. Claudia Padron.

Plaintiff sought review from this Court by filing a complaint on July 11, 2017, challenging the ALJ's assignment of little weight to the opinion of treating physician Dr. Claudia Padron. (1:17-cv-912-EPG – ECF No. 15). In an order entered September 28, 2018, the Court held that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to give Dr. Padron's opinion little weight. (1:17-cv-912-EPG – ECF No. 28). In

1 | determining the proper remedy, the Court concluded as follows:

2 |     Given the limitations expressed by Dr. Padron, it appears highly likely that
3 |     Plaintiff is disabled. Those limitations include an inability to sit less than 2 hours
        or stand/walk less than 2 hours, an inability to lift and carry more than 10 pounds,
4 |     an expectation that Plaintiff would be off-task 20% of the time, and would be
        absent from work 4 or more days per month. However, the Vocational Expert
5 |     testimony does not appear to have addressed precisely this hypothetical, and this
        Court is wary to assume a lack of jobs without such testimony.
6 |
        Accordingly, the Court will REVERSE and REMAND to the ALJ with
7 |     instructions for further administrative proceedings consistent with this opinion. Dr.
        Padron's limitations expressed on AR 655 shall be credited as true. To the extent
8 |     the Commissioner believes that jobs are available notwithstanding these
        limitations, the ALJ may solicit the testimony of a Vocational Expert if she sees
9 |     fit. If the Commissioner does not so believe, or a Vocational Expert finds that the
        limitations preclude employment, benefits shall be awarded.
10 |

11 | (1:17-cv-912-EPG – ECF No. 28, pp. 5-6).

12 |     On July 21, 2017, after Plaintiff had filed her complaint in 1:17-cv-912-EPG, but before

13 | any decision was issued, Plaintiff filed another application for benefits. (A.R. 1249-56). On

14 | November 30, 2018, after this Court's decision in 1:17-cv-912-EPG, the Appeals Council

15 | consolidated Plaintiff's 2014 and 2017 claims and sent the case to a new ALJ for decision. (A.R.

16 | 1113) (citing 20 C.F.R. § 416.1452 - permitting consolidation of cases when they involve same

17 | issues).

18 |     The Appeals Council gave the following instruction:

19 |     On remand, the Court's order requires that the Administrative Law Judge credit as
        true the opinion of Claudia Padron, M.D., from December 4, 2015 (Exhibit 15F).
20 |     That opinion indicates that the claimant cannot sit even two hours or stand/walk
        even two hours, which would preclude fulltime work (Social Security Ruling 96-
21 |     8p). However, remand is warranted to determine the point in time at which such
        limitations apply, as the claimant alleges that she became disabled from working
22 |     as of June 2013, Dr. Padron notes she first began treating the claimant in late 2014,
        and Dr. Padron's written opinion does not identify the date at which her opined
23 |     limitations began (Exhibit l 5F).
24 |

25 | (A.R. 1113).

26 |     On December 5, 2018, five days after the Appeals Council's remand, Plaintiff met with

27 | consultative examiner Dr. Mickey Sachdeva for an internal medicine evaluation, which resulted

28 | in a report generally opining that Plaintiff had few limitations. (A.R. 1587).

1    In preparation for an upcoming hearing for the consolidated proceedings, the new ALJ,

2  Duane Young, requested the medical expert testimony of Dr. James Todd. (A.R. 1246). Dr. Todd

3  had not examined or treated the Plaintiff. (A.R. 2096)

4    On January 7, 2020, Plaintiff, through counsel, amended the onset date of her disability

5  from June 26, 2013, to June 4, 2015. (A.R. 1265).

6    On March 30, 2022, ALJ Young issued a decision awarding benefits until December 4,

7  2018, which was the day before the examination with consulting examiner Dr. Sachdeva. (A.R.

8  993). However, ALJ Young found her not disabled after that time.

9    On June 26, 2020, Plaintiff filed her complaint in the instant case, 1:20-cv-897-JLT-EPG.

10  After briefing, the District Judge deemed this case and 1:17-cv-912-EPG related, reassigning the

11  matter to the undersigned. (ECF No. 37).

12  **II.    ANALYSIS**

13      **A.    Standards**

14    Citing the law of the case doctrine, Plaintiff argues that it was error to schedule a

15  consultative exam with Dr. Sachdeva and to solicit Dr. Todd's testimony. (ECF No. 30, p. 5).

16  Although Plaintiff's argument is presented under the law of the case doctrine, she also mentions

17  the rule of mandate. (*Id.*).

18    The Ninth Circuit has held "that both the law of the case doctrine and the rule of mandate

19  apply in the social security context." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The

20  principles are similar but not the same.

21      The law of the case doctrine generally prohibits a court from considering an issue
        that has already been decided by that same court or a higher court in the same case.

22      *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine is
        concerned primarily with efficiency, and should not be applied when the evidence

23      on remand is substantially different, when the controlling law has changed, or
        when applying the doctrine would be unjust. *See Merritt v. Mackey*, 932 F.2d

24      1317, 1320 (9th Cir. 1991).

25          . . . .

26      "The rule of mandate is similar to, but broader than, the law of the case doctrine."

27      *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The rule provides that any
        "district court that has received the mandate of an appellate court cannot vary or

28      examine that mandate for any purpose other than executing it." *Hall*, 697 F.3d at

4

1067. The district court may, however, "decide anything not foreclosed by the mandate." *Id.* But the district court commits "jurisdictional error" if it takes actions that contradict the mandate.

*Id.* at 567-68 (internal footnote omitted).

Once a case is remanded based on a finding that an ALJ improperly rejected a medical opinion, the ALJ may not revisit the medical opinions and testimony. The Ninth Circuit explained this rule as follows in connection with the "credit-as-true" doctrine:

> Although the Commissioner argues that further proceedings would serve the "useful purpose" of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a "useful purpose" under the first part of credit-as-true analysis. *See Benecke,* 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa,* 367 F.3d at 887 ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility." (citation omitted)).

*Garrison v. Colvin,* 759 F.3d 995, 1021–1022 (9th Cir. 2014).

## B.     Analysis

Plaintiff argues that "[t]he plain language and spirit of this Order [did] not permit the Agency to gather new evidence in order to contradict or limit Dr. Padron's opinion." (ECF No. 30, p. 6). Defendant counters that ALJ Young permissibly obtained new evidence concerning whether Plaintiff's disability ended and properly considered evidence of medical improvement. (ECF 31, at p. 3).

Based on case law cited above, the Court looks to whether the ALJ varied from the mandate, decided an issue foreclosed by that mandate, or took actions that contradicted the mandate. The Court also keeps in mind the Ninth Circuit's direction that, on remand, an ALJ should not "revisit the medical opinions and testimony that she rejected for legally insufficient reasons." *Garrison*, 759 F.3d at 1022.

Again, the relevant mandate stated: "Dr. Padron's limitations expressed on AR 655 shall be credited as true. To the extent the Commissioner believes that jobs are available

1  notwithstanding these limitations, the ALJ may solicit the testimony of a Vocational Expert if she

2  sees fit. If the Commissioner does not so believe, or a Vocational Expert finds that the limitations

3  preclude employment, benefits shall be awarded." (1:17-cv-912-EPG – ECF No. 28, pp. 5-6). Dr.

4  Padron's medical opinion was dated December 4, 2015. (A.R. 655).

5      Here, contrary to the mandate and Ninth Circuit precedent, the ALJ revisited the medical

6  opinions and other evidence surrounding the period covered by that medical opinion on remand.

7  The ALJ's opinion addressed Plaintiff's entire medical file, including reports from 2009 on,

8  which predated the Padron medical opinion addressed in the Court's prior decision. (*See, e.g.*,

9  A.R. 1003 ("As for the claimant's alleged respiratory distress syndrome, in May 2009, a

10 pulmonary function test was normal (Exhibit 4F, p. 8). The claimant was hospitalized in June

11 2013 for dyspnea and asthma. She developed respiratory distress and required BiPAP."); A.R.

12 1004 ("My review of the evidence reveals relatively mild abnormalities in all imaging.")). The

13 ALJ also re-reviewed Plaintiff's function reports and medical opinions that were part of the

14 record at the initial determination and on appeal. It also reviewed Plaintiff's activities of daily

15 living from this time period. (A.R. 1007 ("The claimant reported in February 2014 that she took

16 care of her personal grooming needs, ironed, cleaned her room, did laundry with help, did not

17 drive due to severe anxiety and lightheadedness, shopped, and visited with others.")). None of

18 this re-review of the evidence is consistent with a mandate to credit a medical opinion as true and

19 evaluate whether "jobs are available notwithstanding these limitations." Instead, the ALJ

20 improperly revisited the medical evidence and opinions that had already been weighed and

21 evaluated on appeal.

22      Additionally, contrary to the mandate and Ninth Circuit precedent, the ALJ reevaluated

23 the very opinion that was supposed to be credited as true and expressed detailed criticism of it,

24 stating:

25      I find this opinion suggests limitations that are well beyond the support of the
        objective evidence.

26
        Also, this opinion lacks a level of specificity that would lead a reasonable person
27      toward similar conclusions and, in part, lacks a clear nexus between the limitations
        and impairments. While it is unconventional to rely on such nebulous terminology

28

1
2

> when asserting limitations, I attempt herein to examine the discrepancies and
> vagaries of this report by comparing it to the evidence and consulting a medical
> expert for additional guidance.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

> In her own medical records of February 8, 2016, Dr. Padron refers to the lumbar
> spine x-rays as showing only mild arthritic changes (Exhibit 17F, p. 1).
> Subsequent imaging of the lumbar spine also show only mild abnormalities
> (Exhibit 16F, p. 194) or were unremarkable but for a very slight levo-curvature
> that could be positional, and with mild arthritic changes (Exhibit 10F, p. 3). I note
> that Dr. Padron did not mention a chronic pain syndrome diagnosis as supporting
> the limitations given. Dr. Padron specifically states that osteoarthritis in the hips
> and knees supported the limitations on sitting, standing, and walking. However,
> the available x-rays indicate only mild and minimal degenerative changes in the
> knees and hips. Dr. Padron notes that the claimant has daily, moderate pain that
> "sometimes" rises to become severe pain. Dr. Padron does not define what
> "sometimes" means. Dr. Padron notes that the claimant's subjective
> reports of tenderness in her joints, but does not note swelling (in the joints) as
> clinical findings and objective signs supportive of the limitations assessed. Dr.
> Padron stated that arthritis of the shoulders and hands supported finding the
> claimant had "significant" (but undefined) manipulative limitations. The vague and
> undefined manipulative limitations are of little help in assessing specific functional
> limitations. There are no imaging studies indicating the claimant has arthritis in the
> shoulders and hands. No other medical source opined on the existence of any
> manipulative limitations for the claimant. Therefore, to the extent that this
> manipulative limitation in Dr. Padron's medical source statement could be
> interpreted as indicating disabling limitations existing for more than 12 months, it
> is inconsistent with the record in evidence.

18
19
20
21

(A.R. 1009-10). Then, after criticizing Dr. Padron's opinion as cited above, ALJ Young stated

that, "[d]espite these evidentiary anomalies, the Court has ordered this residual functional

capacity 'must be accepted as true.'" (A.R. 1010 (quotations in original)).  Notwithstanding ALJ

Young's statement that he would nevertheless credit Dr. Padron's opinion as true, this evaluation

and criticism of Dr. Padron's opinion was clearly inconsistent the mandate.

22
23
24
25
26
27

The Commissioner does not defend such analysis or argue that it was proper to re-weigh

all of the evidence on remand. Instead, the Commissioner argues that the ALJ's decision merely

evaluated new evidence from a new time period, *i.e.*, after Dr. Padron's opinion, and concluded

that there had been a medical improvement after this date. Indeed, ALJ Young states his

conclusion in such terms. (A.R. 1014 ("In comparing the claimant's residual functional capacity

for the period during which she was disabled with the residual functional capacity beginning

28

1    December 5, 2018, I find that the claimant's functional capacity for basic work activities has

2    increased.")).

3         However, it is clear from the ALJ's opinion and new medical testimony that ALJ Young

4    did not in fact find evidence of a change in medical condition.  Instead, he improperly relied on

5    medical opinions about the same impairments as at issue in Dr. Padron's opinion.

6         As ALJ Young's opinion states, Plaintiff's underlying impairments did not change from

7    the initial determination to ALJ Young's subsequent opinion. (A.R. 1013 ("Thus, the claimant's

8    current severe impairments are the same as that present from June 4, 2015 through December 4,

9    2018.")). Plaintiff also testified at the hearing on remand that her condition had worsened—not

10   improved.  (A.R. 2116 ("[Question:] Now would you say that your problems are getting better or

11   worse over time?  [Answer] Worse.")). Similarly, the new report of consulting examiner

12   Sachdeva refers to the same impairments as on the initial determination. (A.R. 1587 (reporting

13   "female who reports she has back pain for last 5 years, knee pain also for the last 5 years with on

14   and off swelling in her knees")). Nowhere in ALJ Young's opinion does he cite to any evidence

15   that Plaintiff's underlying physical conditions changed.

16        Moreover, the new medical expert who reviewed Plaintiff's records[2] and testified at the

17   hearing on remand, Dr. Todd, based his opinion on issues regarding Plaintiff's credibility and

18   medication compliance—not any actual change in her underlying condition after the time of Dr.

19   Padron's opinion. Dr. Todd started his testimony by confirming that Plaintiff still had the same

20   underlying conditions as were evaluated by Dr. Padron: "I want to begin by saying she has a

21   chronic pain syndrome exactly as described in 15F [Dr. Padron's opinion], with fatigue, joint

22   pain, anhedonia, knees, hands, shoulder pain." (A.R. 2097). However, Dr. Todd then raised

23   several questions regarding Plaintiff's credibility and treatment compliance, stating:

24        [W]e have to take into account the doctor's recommendation for treatment,
          whether it be taking a pill to get better or whether it be going to physical therapy or
25        whether it be going to a chronic pain management group. So I've taken that into
          account, Your Honor, looking at what was recommended by Dr. Padron in Exhibit
26        15F and the treatment was recommended, chronic pain management, and those
          notes are at 26F and 27F. And they disclose that she has only gone to pain
27

28   _____
     [2] Dr. Todd did not examine Plaintiff.

management two times. . . . Yet her treating doctors say that she is active in pain
management. There are only two visits so I would dispute that she is actively being
treated by chronic pain management. There are no clinical notes indicating that
she's taking the proper treatment as would be recommended by Dr. Padron in
Exhibit 15F. So she has this problem but she's not following directions of the pain
management doctors.

(A.R. 2098). The ALJ then asked, "was there any information indicating whether that was due to

a lack of insurance or ability to pay for it, sir, the treatment?" Dr. Todd answered, "I would have

no knowledge on that." (A.R. 2098). Dr. Todd then questioned certain records regarding

Plaintiff's medication, including that she "was intermittently taking other medications," which led

him to believe that she had been taking "somebody else's narcotic medications, which is against

the contracting rule." (A.R. 2099). Based on these supposedly inconsistent records of

medications, Dr. Todd testified, "it's not clear to me where she's in pain or not. She certainly

needs narcotics but – I mean she certainly needs opiates but does she need them every day or

once in a while?  It's very unclear how much pain she needs." (A.R. 2099). Elsewhere, Dr. Todd

questioned, "it's unclear what the source of her pain is," and "[i]t's not clear if she's going to

physical therapy." (A.R. 2101).

The ALJ then asked Dr. Todd "what would be the limitations you would expect to be

supported by the record?" (A.R. 2104). Dr. Todd answered:

Well, so Your Honor, there's two answers to that question.  I'm going to begin by
saying the two answers. ***The first answer is based on Exhibit 15F*** and the
patient's own complaints in the record, she would not be able to do any kind of
work at all.  She wouldn't even be able to work for one hour in a 24-hour period.
That's one opinion.  ***Now I have a second opinion***.  Based on the longitudinal
clinical record, including the physical therapy notes at 32F, page 266, the chronic
pain management notes at 27F, page 4, 26F, page 13, where her exam is
completely normal, she would be able to stand and walk six out of eight hours a
day, she would be able to lift and carry 10 pounds frequently and 20 pounds
occasionally throughout an eight-hour workday based on the neurologic exams by
the doctors and by the physical therapist.

(A.R. 2104) (emphasis added). Again, Dr. Todd explained his opinion as a "second opinion" to

Dr. Padron's, based on the medical evidence. He did not say his opinion was based on medical

improvement from Plaintiff.

At the prompting of ALJ Young, Dr. Todd then gave the opinion that the limitations in

9

1    Dr. Padron's medical statement only lasted 3 months, and not the required 12-month period.

2    (A.R. 2106 ("[Question:] Now those limitations in that opinion, is there a reasonable certainty

3    that you can see from the record that those kinds of limitations would be in existence for at least a

4    12-month period someplace in the file?  [Answer:] No. She was referred to chronic pain

5    management shortly after this was filled out and went to two visits. She also went to physical

6    therapy for one visit at 32F, page 266. There's no – these would be a temporary problem that

7    would last for maybe three months.")). This opinion too contradicted the mandate to credit Dr.

8    Padron's opinion as true that award benefits if "the limitations preclude employment."

9           Another indication that ALJ Young reconsidered the medical evidence rather than making

10   a true determination of changed condition is that he gave significant weight to the state agency

11   consultants from the initial proceeding, who contradicted Dr. Padron's opinion. (A.R. 1006 ("The

12   Administrative Law Judge gives significant weight to the light exertional and postural limitations

13   described by the State agency consulting physicians at both the initial and reconsideration levels

14   as they [are] more consistent with the longitudinal evidence even considering the minimal to mild

15   musculoskeletal degenerative changes.")). This too is not consistent with the direction to credit

16   Dr. Padron's opinion as true on remand.

17          Thus, setting aside whether it would be legally permissible to terminate disability

18   payments upon a true finding of medication improvement on remand, that is not what ALJ Young

19   did here. ALJ Young did not truly credit Dr. Padron's opinion and then assess changes in

20   Plaintiff's medical circumstances. Rather, ALJ Young re-evaluated all the medical evidence from

21   the prior proceeding, gave weight to opinions that contradicted Dr. Padron's, extensively

22   criticized the opinion of Dr. Padron, gave substantial weight to a doctor who gave a "second

23   opinion" to Dr. Padron, and then cut-off benefits at the date of the second opinion.

24          Thus, although ALJ Young terminated benefits only after the date of Dr. Padron's

25   opinion, that decision was not consistent with the mandate to credit Dr. Padron's opinion as true

26   and award benefits if the limitations expressed in that opinion precluded employment.

27   \\\

28   \\\

10

III.     **CONCLUSION AND RECOMMENDATIONS**

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. The decision of the Commissioner of the Social Security Administration be reversed;

2. The matter be remanded for the immediate award of benefits; and

3. The Clerk of Court be directed to enter judgment in favor of Plaintiff and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 6, 2022**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE